IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )　No. 04-20223-JPM |
| | ) |
| ROBERT PRINCE, III, | ) |
| | ) |
| Defendant. | ) |

---

## ORDER DENYING DEFENDANT'S CONSOLIDATED MOTION FOR JUDGMENT OF ACQUITTAL OR FOR A NEW TRIAL

---

Defendant Prince was charged with multiple counts of conspiracy and financial crimes related to his involvement with certain physical therapy companies.  After ten days of evidence and two days of deliberation, the jury convicted Defendant of one count of conspiracy to commit money laundering in violation of Title 18 U.S.C. §1956(h) and of thirty-eight counts of money laundering in violation of 18 U.S.C. § 1956(a)(1).  The jury acquitted Defendant of eight substantive counts of health care fraud and one count of conspiracy to commit health care fraud, wire fraud, and kickbacks.  The jury verdict was entered on June 26, 2008 (Doc. 375).  On July 2, 2008, Defendant filed a Consolidated Motion for Judgment of Acquittal and for a New Trial (Doc. 382). For the reasons that follow, Defendant's Consolidated Motion is DENIED.

**Legal Standards**

Pursuant to Federal Rule of Criminal Procedure 29(c), Defendant moves the Court to set aside his guilty verdict and enter a judgment of acquittal. See Fed. R. Crim. P. 29(c)(2). Defendant's motion must be granted if the evidence, viewed in the light most favorable to the government, is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a); see also U.S. v. McGee, 529 F.3d 691, 696 (6th Cir. 2008). A motion for judgment of acquittal should be denied if the evidence "would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." McGee, 529 F.3d at 696 (internal quotation omitted).

In the alternative, Defendant moves the Court to vacate the judgment and order a new trial. Federal Rule of Criminal Procedure 33(a) provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Defendant argues that the interests of justice require a new trial because the jury's guilty verdict is "against the manifest weight of the evidence." (Def.'s Consolidated Mot. for J. of Acquittal and Mot. for New Trial 2, citing United States v. Hughes, 505 F.3d 578, 593 (6th Cir. 2007)). When considering the Defendant's motion for a new trial, the court may act as a

"thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." Hughes, 505 F.3d at 593. "Generally, such motions are granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." Id. at 592-93 (internal quotation omitted).

A defendant's burden to show that the verdict is "against the manifest weight of the evidence" (the new trial standard) is lower than his burden to show that the evidence was "insufficient to sustain a conviction" (the acquittal standard). The Court's analysis will focus on whether the jury's verdict was against the manifest weight of the evidence. Because Defendant cannot show that he is entitled to a new trial, he cannot meet the higher burden of showing that the evidence is insufficient to support the verdict.

**Discussion**

A conviction for money laundering under 18 U.S.C. §1956(a)(1)(A)(i) requires that the government prove, beyond a reasonable doubt, that (1) Defendant conducted or attempted to conduct a financial transaction which involved proceeds of a specified unlawful activity (health care fraud); (2) Defendant knew the transaction involved proceeds of some form of unlawful activity; and (3) Defendant intended to promote the carrying on

of the specified unlawful activity (health care fraud). 18
U.S.C. §1956(a)(1)(A)(i).

A conviction for conspiracy to commit money laundering
under 18 U.S.C. §1956(h) requires that the government prove,
beyond a reasonable doubt, that the Defendant conspired to
violate either 18 U.S.C. §1956 or §1957. Count Fourteen of the
indictment, the money laundering conspiracy count, alleges a
conspiracy to violate both 18 U.S.C. §1956 and §1957. Section
1957 requires showing, among other things, that the defendant
knew the transaction involved criminally derived property. 18
U.S.C. §1957.

### The "Knowledge" Elements

Defendant's Consolidated Motion first focuses on the
"knowledge" elements of the money laundering and conspiracy to
commit money laundering charges. The crux of Defendant's
argument is that the "evidence does not establish that he knew
that [the] checks [he wrote] were funded by proceeds from a
health care fraud scheme." (Def.'s Mem. 12-13.) After reviewing
the evidence presented at trial, and assessing the credibility
of witnesses, the Court concludes that the evidence supports
finding that Defendant knew his transactions involved the
proceeds of health care fraud.[1] The jury's conclusion on the

---

[1] Notably, the "knowledge" requirements of §1956 and §1957 do not require the government to establish that Defendant knew the transactions involved *health care fraud* proceeds. The government need only show that

issue of Defendant's knowledge is not against the manifest weight of the evidence.

The government presented evidence that Defendant knew Donnsey and Solday did not comply with Medicare regulations. For example, Michael Prince testified[2] that he handed a copy of the "Dockery Letters" to Defendant. (Tr. 226, 371-72.) The letters explain the requirement for physician supervision, describe certain non-compliant billing practices that result in overpayments, and conclude that suspension of Medicare payments to the physical therapy companies is appropriate. (Exhibits 159-163; Tr. 188-211.) Michael Prince testified that he shared the contents of the Dockery Letters with the other principals of Donnsey, one of whom was Defendant. (Tr. 187, 190, 192, 225, 226.) Furthermore, a letter from Rod Ciccone to Defendant indicates that Defendant knew Donnsey had not been in compliance with Medicare regulations (Exhibit 182, Letter from Rod Ciccone to Robert Prince III dated 2/29/2000; Rod Ciccone Testimony Tr. 37-39.) The testimony of Dr. Watts included additional evidence that Defendant knew that at least some of the companies were engaging in fraudulent behavior. Dr. Watts testified that, in

_____

Defendant knew the transactions involved proceeds of "some form of unlawful activity" (§1956) or was "criminally derived" (§1957). The weight of the evidence would permit a reasonable jury to conclude, however, that Defendant in fact knew the transaction involved the particular specified unlawful activity, health care fraud.

[2] On a motion for a new trial, the Court is permitted to make its own credibility determinations. The Court acknowledges the Defendant's concerns about Michael Prince's credibility. (Def.'s Mem. 5 n. 2) The Court declines, however, to discredit Michael Prince's testimony.

the Spring of 2001, she had a conversation with her brothers about "upcoding." (See Def. Consolidated Mot. 8.)  In summary, the testimony of Michael Price, Dr. Watts, and Rod Ciccone provide evidence that Defendant knew previous companies, including Solday and Donnsey, were not complying with Medicare regulations.

The government also presented evidence that subsequent physical therapy companies, including TLR and Brittsen, were operated in substantially the same manner as the previous companies. Michael Prince testified, for example, that Brittsen was set up the same as his previous physical therapy companies (Tr. 55) and that TLR operated in the same fashion as the previous companies (Tr. 158).  Michael Prince also testified that, by the time they opened TLR, they did not even try to hire physical therapists anymore. (Tr. 153.)

The government also presented evidence of Defendant's involvement with both TLR and Brittsen. For example, Michael Prince testified that Defendant handled the finances for Brittsen (Tr. 64, 388-89) and was a part-owner of TLR.

The government presented evidence that Defendant knew that previous companies violated Medicare regulations and knew that later companies (TLR and Brittsen) operated in essentially the same way.  The jury's conclusion that Defendant knew the later

companies (TLR and Brittsen) received some of their income through Medicare fraud is therefore not against the manifest weight of the evidence.

Defendant argues that there is "virtually no evidence" that Defendant had knowledge of the companies' operations (Def.'s Mem. 10) and that "[t]he absence of exhibits establishing any connection between Defendant . . . and the operations of [the companies] underscores" his lack of knowledge about the illegal companies' activities (Def.'s Mem. 11). Defendant points out that he only signed checks from certain companies, not others, and to certain payees, not others. Furthermore, Defendant notes that he did not have an ownership interest in all of the companies involved in the health care fraud. Defendant also notes Michael Prince's testimony that he did not have "formal conversations" with Defendant about all Michael Prince's other companies.

However, as previously discussed (pages 4-6 supra), the government presented evidence that Defendant and his siblings had a pattern of incorporating physical therapy companies, billing Medicare for non-reimbursable services, and dissolving the companies when Medicare payments were suspended. Defendant's involvement with multiple physical therapy companies across several years, combined with his business relationship

7

with Michael Prince and Dr. Watts, supports the jury's finding that Defendant knew his transactions involved proceeds of health care fraud. This finding was not against the manifest weight of the evidence.

Defendant argues that his acquittals on the health care fraud counts suggest that the evidence was insufficient to support a conviction for money laundering. (Def.'s Mem. 3.) According to Defendant, the health care fraud acquittals indicate that the jury "was not convinced beyond a reasonable doubt that Defendant PRINCE knew of the health care fraud conspiracy . . . ." Without knowledge of the health care fraud, Defendant argues, he cannot be guilty of money laundering. This argument is unavailing because the jury's acquittal could have rested on any number of findings, only one of which is that they were not convinced Defendant knew of the health care fraud.

Defendant also argues that the absence of "direct" testimony about Defendant's knowledge is significant. (Def.'s Mem. 7.) This argument is unpersuasive for three reasons. First, it is well established that the "knowledge prong of the money laundering statute can be proven by direct or circumstantial evidence." United States v. Johnson, 26 Fed. Appx. 441, No. 00-1773, 2001 U.S. App. LEXIS 27014 (6th Cir. Dec. 17, 2001), citing United States v. Moss, 9 F.3d 543, 551-52

(6th Cir.1993); see also United States v. Scruggs, 549 F.2d
1097, 1104 (6th Cir. 1977) ("Proof of knowledge, like proof of
intent, is rarely established by direct evidence ...
circumstantial evidence [and] independent facts from which an
inference of the ultimate fact may rationally be drawn in light
of common experience can be sufficient to support a jury's
determination"), cert. denied 434 U.S. 824, 98 S.Ct. 70, 54
L.Ed.2d 81 (1977). See also United States v. Jackson, 55 F.3d
1219, 1225 (6th Cir. 1995).  Second, the jury could have found
that the Defendant was willfully blind to the unlawful source of
the funds; such a finding would not require direct testimony of
Defendant's knowledge.  Third, admissible "direct" testimony
about Defendant's actual knowledge would be extremely difficult
to obtain.  Intent and knowledge are difficult to establish
through direct evidence and generally depend on inferences drawn
from circumstantial evidence.

Defendant argues that the only evidence connecting Prince
with the transactions in Counts 15-29 is "the uncorroborated
testimony of Dr. Prince Watts that she conferred with Defendant
. . . with respect to each check that she wrote." (Def. Mem. 9.)
The "uncorroborated testimony" of a coconspirator may be used to
support a conviction.  See United States v. Owens, 426 F.3d 800
(6th Cir. 2005).  At trial the Court did not perceive that Dr.

Watts lacked credibility. The Court, therefore, declines to disrupt the jury's verdict on this basis.

Defendant also argues that he was not on notice of the fraudulent billing practices until April, 2001. As discussed above, however, Michael Prince testified that he personally handed Defendant the Dockery Letters. Defendant argues that these letters establish only past violations, and do not establish that Defendant knew Brittsen and TLR were also violating Medicare regulations. Defendant is correct that the Dockery Letters do not provide direct evidence that he knew Brittsen and TLR were engaged in health care fraud. These letters dealt with other companies. The evidence suggests, however, that the illegal practices outlined in the Dockery Letters were the same billing and supervision practices used at Brittsen and TLR. Defendant's knowledge of previous violations and the similarity of operations at Brittsen and TLR and operations at previous companies is evidence from which the jury could conclude that Defendant knew about the health care fraud. Defendant's involvement in the finances and/or ownership of these companies is further evidence that he knew about the fraud.

Defendant emphasizes the lack of evidence about his knowledge of operations at Brittsen and TLR, and the lack of

evidence establishing that he knew doctors were not supervising technicians. Def.'s Reply at 4. Defendant also notes that there is no evidence connecting him to the Brittsen account until January, 2001. For example, Defendant did not receive Brittsen bank statements. As discussed above, however, the jury was free to infer from Defendant's involvement with other, similar companies, owned and operated by the same group of people, that Defendant had knowledge that he was transacting in proceeds from health care fraud.

For all these reasons, the Court concludes that the jury's finding that Defendant *knew* he was transacting in the proceeds of unlawful activity is not against the manifest weight of the evidence.

<u>Santos and the Definition of "Proceeds"</u>

In his Supplemental Memorandum of Law, Defendant argues that he must be acquitted of some of the money laundering counts because of the Supreme Court's recent decision in <u>United States v. Santos</u>, 128 S.Ct. 2020 (2008). In <u>Santos</u>, the plurality opinion concluded that the term "proceeds" in the federal money laundering statute, 18 U.S.C. § 1956(a)(1),[3] means "profits" rather than "receipts." <u>Id.</u> at 2024. Defendant argues that (1)

---

[3] Section 1956(a)(1) punishes anyone who "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . (A)(i) with the intent to promote the carrying on of specified unlawful activity . . . ."

the Santos definition of proceeds as "profits" applies in his case; and (2) some of his money laundering convictions were based on transactions that did not involve "profits" of a specified unlawful activity.  Specifically, Defendant argues that Counts 15-41, 43-44, 46, and 48[4] involved "payments to the billing companies and the persons contracted to perform quality assurance."  (Def.'s Supp. Mem. 1.)  According to Defendant, these payments "constituted part of the costs of operations of the clinics" and cannot, therefore, be the basis of a money laundering conviction after Santos.  (Id.)

The government responds that (1) the Santos definition of "proceeds" as "profits" applies "only when the specified unlawful activity charged . . . is the operation of an illegal gambling business;" and (2) even if the "profits" definition did apply in this case, each transaction supporting the money laundering counts did involve profits of the specified unlawful activity, health care fraud.  (U.S. Resp. 1-2.)

---

[4] At the close of the government's case at trial, Defendant moved for a Judgment of Acquittal on Counts 15-45, 46, and 48.  In the pending post-trial motion, Defendant moves for dismissal of Counts 15, 42, 43-44, 46, and 48.  (Doc. 383.)  Based on the arguments presented in Defendant's memoranda, the Court treats Defendant's pending motion as a motion for acquittal on Counts 15-41, 43-44, 46, and 48.  Defendant argues that transactions based on payments "to the billing companies and the persons contracted to perform quality assurance" involve the business expenditures and that, after Santos, he cannot be convicted of money laundering for these transactions because they did not involve "profits" of health care fraud.  (Suppl. Mem 1.)   The underlying transactions in Counts 42, 45, 47 and 49 are payments to Defendant.  The Court assumes, based on Defendant's exclusion of Counts 45, 47 and 49 from his Santos argument, that Defendant recognized these payments to himself as transactions in profits.  See United States v. Shelburne, 563 F. Supp.2d 601, 607 (W.D. Va 2008) (finding that the two payments of salary to the defendant were transactions in "profits"). The Court therefore treats Defendant's Santos-based motion as a motion for acquittal on Counts 15-41, 43-44, 46, and 48.

The defendant in <u>Santos</u> was operating an illegal lottery. The transactions underlying his money laundering convictions were payments to lottery winners and employees. The question before the Supreme Court was "whether the term 'proceeds' in the federal money-laundering statute, 18 U.S.C. § 1956(a)(1), means 'receipts' or 'profits.'" 128 S.Ct. at 2022.

Writing for four justices, Justice Scalia's plurality opinion concludes that "proceeds" means "profits" in the federal money laundering statute because the rule of lenity requires adopting this "more defendant friendly" definition. <u>Id.</u> at 2025. Justice Alito, writing for the four dissenting justices, would define "proceeds" as "the total amount brought in." <u>Id.</u> at 2035 (Alito, J., dissenting). Justice Stevens cast the tie-breaking vote, concurring in the judgment but concluding that the Court "need not pick a single definition of 'proceeds' applicable to every unlawful activity . . . ." <u>Id.</u> at 2033 (Stevens, J., concurring). Justice Stevens agrees with Justice Scalia that "proceeds" means "profits" where the specified unlawful activity is illegal gambling. <u>Id.</u> at 2032-33. He reasons that the lack of legislative history and the "perverse result"[5] of applying the "receipts" definition counsel in favor

---

[5] Here Justice Stevens is referring to the so-called "merger problem," described by the plurality as follows: "If 'proceeds' meant 'receipts,' nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts . . . . Since few

13

of applying the "profits" definition where the specified unlawful activity is illegal gambling.  Id. at 2032-33, 2034 n. 7.  Where the unlawful activity is the sale of contraband, however, or "the operation of organized crime syndicates involving such sales," Justice Stevens favors the dissent's "receipts" definition.  Id. at 2032.

Justice Stevens "would interpret 'proceeds' to mean 'profits' for some predicate crimes, 'receipts' for others." Id. at 2030 (Scalia, J.); id. at 2034 n. 7 ("'[P]roceeds' need not be given the same definition when applied to each of the numerous specified unlawful activities that produce unclean money.") (Stevens, J., concurring).  Notably, however, both Justice Scalia's opinion[6] and Justice Alito's dissent explicitly reject the notion that the meaning of the term "proceeds" would vary based on the specified unlawful activity.  See Id. at 2030 (Scalia, J.) (citing Clark v. Martinez, 543 U.S. 371 (2005) for the proposition that "the meaning of words in a statute cannot change with the statute's application" and calling Justice Stevens' position "interpretive contortion"); id. at 2035-36

---

lotteries, if any, will not pay their winners, the statute criminalizing illegal lotteries . . . . would 'merge' with the money-laundering statute." Id. at 2026.

According to the plurality, "[t]he merger problem is not limited to lottery operators" because most crimes involve costs, which may be paid after-the-fact using monies acquired from the crime.  Id. at 2026-27.  "Interpreting 'proceeds' to mean 'profits' eliminates the merger problem." Id. at 2027.

[6] This part of Justice Scalia's opinion, Part IV, was joined by Justices Souter and Ginsburg.  Justice Thomas did not join Part IV.

14

(Alito, J., dissenting) ("I cannot agree with Justice Stevens's
approach insofar as it holds that the meaning of the term
"proceeds" varies depending on the nature of the illegal
activity that produces the laundered funds. . . .").

The question for this Court is whether the <u>Santos</u>
definition of "proceeds" as "profits" is limited to cases in
which the specified unlawful activity is illegal gambling.  If
<u>Santos</u> is limited to its facts, prior Sixth Circuit law defining
"proceeds" as "receipts" continues to apply where, as here, the
specified unlawful activity is health care fraud.  <u>See</u> <u>United</u>
<u>States v. Prince</u>, 214 F.3d 740, 746 (6th Cir. 2000); <u>United</u>
<u>States v. Haun</u>, 90 F.3d 1096, 1101 (6th Cir. 1996).  If <u>Santos</u>
is not so limited, Defendant might be entitled to a new trial in
which the jury would be instructed using the "profits"
definition of "proceeds."  For the following reasons, the Court
concludes that <u>Santos</u> is limited to its facts.

<u>Santos</u> is a case in which "no single rationale explaining
the result enjoys the assent of five Justices."  <u>Marks v. United</u>
<u>States</u>, 430 U.S. 188, 193 (1977) (internal quotation omitted).
Five Justices concluded that "proceeds" means "profits" where
the specified unlawful activity is an illegal gambling
enterprise.  <u>Santos</u>, 128 S.Ct. at 2032-33 (Stevens, J.,
concurring).  Five Justices opined (in dicta) that "proceeds"

means "gross receipts" or "the total amount brought in" where
the specified unlawful activity is selling contraband. Id. at
2032 (Stevens, J., concurring); Id. at 2044 (Alito, J.,
dissenting) (proceeds means gross receipts in all applications
of the statute). At least seven Justices agreed, however, that
the term "proceeds" could not vary based on the specified
unlawful activity. See Id. at 2030 (Scalia, J.); Id. at 2035-36
(Alito, J., dissenting). In the absence of a majority opinion,
Marks dictates that the holding of Santos is the "position taken
by [that] member[] who concurred in the judgment on the
narrowest grounds. . . ." Marks, 430 U.S. at 193. As the
Supreme Court has recognized, however, the Marks test is
sometimes "more easily stated than applied." Grutter v.
Bollinger, 539 U.S. 306, 325 (2003); see also Nichols v. United
States, 511 U.S. 738, 745 (1994).

Indeed, the Supreme Court Justices themselves did not agree
on the precedential effect of their decision. According to the
plurality, the holding of Santos, considering Justice Stevens'
concurrence, is: "'proceeds' means 'profits' when there is no
legislative history to the contrary." 128 S.Ct. at 2031.
Justice Stevens, however, insists that the plurality's
characterization "is not correct." Id. at 2034 n. 7 (Stevens,
J., concurring). According to Stevens, his decision to concur

in the judgment was based on two factors: (1) the lack of
legislative history relevant to unlawful lottery cases and (2)
the "perverse result" created by the merger problem if the
"gross receipts" definition is applied to illegal gambling
cases.  Id. at 2034 n. 7 (Stevens, J., concurring); see also
United States v. Hedlund, CR-06-346-DLJ, 2008 WL 4183958 at *3
(N.D. Cal. Sept. 9, 2008) (summarizing Justice Stevens'
argument).

The lower courts have reached varied conclusions about the
holding in Santos.  Some courts have held that "proceeds" means
"profits" in all money laundering cases, regardless of the
specified unlawful activity.  United States v. Thompson, No.
3:06-CR-123, 2008 WL 2514090 at *1-2 (E.D. Tenn. June 19, 2008)
(Santos definition of "proceeds" applies to all specified
unlawful activities because the merger problem is not limited to
lotteries.); United States v. Hedlund, No. CR. 06-346-DJL, 2008
WL 4183958 at *6 (N.D.Cal. Sept. 9, 2008) (proceeds means
profits for all specified unlawful activities because Clark v.
Martinez forbids giving a word different meanings in different
applications of the same statute).  See also United States v.
Baker, No. 06-cr-20663, 2008 WL 4054998 at *2-4 (E.D. Mich. Aug.
27, 2008) (rejecting government's argument that Santos
definition applies only to illegal gambling cases); United

States v. Shelburne, 563 F. Supp. 2d 601, 607 (rejecting government's argument that, in the absence of a merger problem, Santos definition does not apply); United States v. Poulsen, 568 F. Supp. 2d 885, 913-914 (S.D. Ohio Aug. 1, 2008) (stating, in dicta, that convictions "would have to be vacated" if the relevant transactions involved expenses like paying employees, paying marketing costs, or paying outside professionals). At least one court adopted the plurality's view of the precedential effect of the case, holding that "'proceeds' means 'profits' when there is no legislative history to the contrary." United States v. Yusuf, 536 F.3d 178, 186 n. 12 (3rd Cir. 2008) (quoting Santos, 128 S.Ct. at 2031).

Other courts have read Santos more narrowly. See United States v. Orosco, No. 07-cr-00275-EWN, 2008 WL 4194878 at *2-4 (D. Colo. July 17, 2008) (Santos had no effect on the definition of "proceeds" where the specified unlawful activity is not illegal gambling); United States v. Fleming, Nos. 06-3640, 07-2369 and 07-2822, 2008 WL 3824752 at *4 (3rd Cir. Aug. 15, 2008) (Santos had no effect on the definition of "proceeds" where the specified unlawful activity is drug sales).

This Court concludes that the narrow holding of Santos is that "proceeds" means "profits" where the specified unlawful activity is the operation of an illegal gambling business. This

is the position taken by Justice Stevens, the member "who concurred in the judgment on the narrowest grounds."  See Marks, 430 U.S. at 193; see also Triplett Grille, Inc. v. City of Akron, 40 F.3d 129, 134 (6th Cir. 1994) ("While there is some awkwardness in attributing precedential value to an opinion of one Supreme Court justice to which no justice adhered, it is the usual practice when that is the determinative opinion.").

In the present case, Defendant's money laundering conviction was based on transactions involving the proceeds of health care fraud, not illegal gambling.  Santos does not affect the definition of "proceeds" in this case.  This Court continues to apply the "receipts" definition of "proceeds" in cases like this one, in which the specified unlawful activity is health care fraud.[7]  The jury was properly instructed using the "receipts" definition of "proceeds."[8]

"Intent to promote"

Finally, Defendant argues that he must be acquitted of Counts 42, 45, 47, 49 and 50-54 because the government failed to

---

[7]  The Court acknowledges that application of the "profits" definition in the illegal gambling context and the "receipts" definition in the health care fraud context is in tension with Clark v. Martinez, 543 U.S. 371 (2005) (refusing to give detention provision of Immigration and Nationality Act different meanings for different categories of aliens), with the view of at least seven justices in Santos (see 128 S.Ct at 2030 (Scalia, J.); id. at 2035-36 (Alito, J., dissenting), and with Justice Stevens' dissent in Pace v. DiGuglielmo, 544 U.S. 408, 425-26 ("This Court has generally declined to adopt rules that would give the same statutory provision different meanings in different contexts and I would decline to do so here.") (internal citation omitted).  This tension is the inevitable result of application of the Marks rule to the fragmented decision in Santos.

[8]  "The term "proceeds" means any property, or any interest in property, that someone acquires or retains as a result of the commission of the specified unlawful activity. Proceeds can be any kind of property, not just money." (Jury Instructions 52.)

establish that the payments in these Counts, checks written to Defendant and Darryl Dempsey, were made for the purpose of "promoting" health care fraud. This argument is unavailing. Conviction under § 1956(a)(1)(A)(i) requires the government to show that Defendant had "intent to promote the carrying on of specified unlawful activity . . . ." Intent can be implied from the circumstances.

Michael Prince testified that Darryl Dempsey provided billing, marketing and other services to Brittsen (Tr. 57.) and that Defendant was involved in handling the finances for Brittsen (Tr. 62-64.) Michael Prince also testified that Darryl Dempsey's role in Tender Loving Rehabilitation Center was billing, and that Defendant's role in Tender Loving was the financials. (Tr. 109.) A reasonable jury could have concluded that the checks to Defendant and Darryl Dempsey were compensation for their services and, as such, were intended to promote the carrying on of the health care fraud.

## CONCLUSION

For the reasons set forth above, the jury's verdict is not against the manifest weight of the evidence, and the evidence is sufficient to support the verdict. Defendant's Consolidated Motion is DENIED.

So ORDERED this 6th day of November, 2008.

/s/ JON P. McCALLA
UNITED STATES DISTRICT JUDGE